JS 44(Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September, 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
LEHIGH VALLEY PHYSICIAN GROUP

## DEFENDANTS
MDVIP, INC.

(b) County Of Residence Of First Listed Plaintiff  LEHIGH
(EXCEPT IN U.S. PLAINTIFF CASES)

County Of Residence Of First Listed Defendant  Palm Beach
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NO.)
A. James Johnston, Esq., Edward F. Shay, Esq.,
Andrew W. Allison, Esq.
Post & Schell, PC
1600 John F. Kennedy Blvd.
Philadelphia, PA  19103-2808

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(Place an X in ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an X in ONE BOX for Plaintiff and ONE BOX for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign County | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | | | ☐ 620 Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks & Banking |
| ☐ 140 Negotiable Instrument | ☐ 315 Airplane Product Liability | Med Malpractice | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury— Product Liability | ☐ 640 R.R. & Truck | PROPERTY RIGHTS | ☐ 460 Deportation |
| | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt |
| ☐ 151 Medicare Act | | | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | Organizations |
| ☐ 152 Recovery of DefaultedStudent Loans (Excl. Veterans) | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 690 Other | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | | | ☐ 850 Securities/ Commodities/ |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | LABOR | SOCIAL SECURITY | Exchange |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395FF) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung(923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | | | | ☐ 863 DIWC (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determination Under |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus | | ☐ 870 Taxes | Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS-Third Party 28 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | | ☐ 535 Death Penalty | | ☐ 875 Customer Challenge 12 USC 3410 | ☒ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 540 Mandamus & Others | | | |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite The U.S. Civil Statute Under Which You Are Filing And Write Brief Statement of Cause. Do Not Cite Jurisdictional Statutes Unless Diversity.)
28 U.S.C. § 1332 - Diversity

## VII. REQUESTED IN COMPLAINT
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $
Equitable Relief

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____   DOCKET NO. _____

DATE  October 14, 2010

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICIAL USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LEHIGH VALLEY PHYSICIAN GROUP   :
                                          :
              Plaintiff,                 :
                                            :
      v.                             :     Civil Action No. _____
                                            :
                                            :
MDVIP, INC.                         :
                                            :
              Defendant.           :

**DISCLOSURE STATEMENT FORM**

Please check one box:

☒          The non-governmental corporate party, _____, in the above listed civil action does not have any parent corporation and publicly held corporation that owns 10% or more of its stock.

☐          The non-governmental corporate party,_____, in the above listed civil action has the following parent corporation(s) and publicly held corporation(s) that owns 10% or more of its stock:

_____


Date:  October 14, 2010_____          _____
                                                           ANDREW W. ALLISON
                                                           Attorney for Plaintiff,
                                                           Lehigh Valley Physician Group

**UNITED STATES DISTRICT COURT**                                       APPENDIX F

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: Roma Corporate Center, 1605 North Cedar Crest Boulevard, Suite 610, Allentown, PA 18104

Address of Defendant  6001 Broken Sound Parkway, NW, Suite 100, Boca Raton, FL 33487

Place of Accident, incident or Transaction: **Allentown, PA**
*(Use Reverse Side for Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

  (Attach two copies of the Disclosure Statement Form in accordance with Fed. R. Civ. P. 7.1(a))          Yes ☐      No ☒

Does this case involve multidistrict litigation possibilities:          Yes ☐      No ☒
*RELATED CASE IF ANY:*

Case Number: N/A          Judge: N/A          Date Terminated: N/A

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier number suit pending or within one year previously terminated action in this court?
                                                                                            Yes ☐      No ☒
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?          Yes ☐      No ☒
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?          Yes ☐      No ☒

CIVIL: (Place ✓ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act - Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
      (please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability--Asbestos
9. ☒ All other Diversity Cases

    (Please specify) Misappropriation of Trade Secrets –
    Pennsylvania Uniform Trade Secret Act

**ARBITRATION CERTIFICATION**
*(Check appropriate category)*

I,          Andrew W. Allison          , counsel of record do hereby certify:
  ☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that, to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000 exclusive of interest and cost;
  ☒ Relief other than monetary damages is sought.

DATE: October 14, 2010          _____          63116
                                  Attorney-at-Law          Attorney I.D. #
  **NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P.38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 10/14/10          _____          63116

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| **LEHIGH VALLEY PHYSICIAN GROUP** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **MDVIP, INC.** | : | **NO.** |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)      Habeas Corpus – Cases brought under 28 U.S.C. § 2441 through § 2255.    ( ☐ )

(b)      Social Security – Cases requesting review of a decision of the secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( ☐ )

(c)      Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( ☐ )

(d)      Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( ☐ )

(e)      Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( ☒ )

(f)      Standard Management – Cases that do not fall into any one of the other tracks.    ( ☐ )

**October 14, 2010**
**DATE**

**ATTORNEY-AT-LAW**
**Attorneys for Plaintiff**

Civ. 660 (7/95)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **LEHIGH VALLEY PHYSICIAN GROUP**<br>**Roma Corporate Center**<br>**1605 North Cedar Crest Boulevard**<br>**Suite 610**<br>**Allentown, PA  18104** | :<br>:<br>:<br>:<br>:<br>: **CASE NO. _____** |
| **Plaintiff** | :<br>:<br>: |
| **v.** | :<br>: |
| **MDVIP, INC.**<br>**6001 Broken Sound Parkway, NW**<br>**Suite 100,**<br>**Boca Raton, FL  33487** | :<br>:<br>:<br>:<br>: |
| **Defendant.** | :<br>:<br>: |

## VERIFIED COMPLAINT

Plaintiff Lehigh Valley Physician Group ("Plaintiff" or "LVPG"), by and through its undersigned counsel, hereby files the following verified complaint against Defendant MDVIP, Inc. ("MDVIP" or "Defendant").

## INTRODUCTION

1.       LVPG brings this action for preliminary and permanent injunctive relief to stop the wrongful conduct of MDVIP, a national network of physicians utilizing the "retainer medicine" or "concierge medicine" business model.

2.       During the recruitment of a LVPG employed general internist, Mark A. Kender, M.D., MDVIP wrongfully received and utilized a list of all patients assigned to Dr. Kender by LVPG.

1

3.        Dr. Kender served as an employed physician beginning on April 15, 2003, and was responsible for providing innovative and patient-focused health care to each patient assigned to him by LVPG.  At the time of his recruitment by MDVIP, Dr. Kender was assigned over twenty-two hundred patients.

4.        LVPG has invested substantial sums to develop its patient lists, which are highly valuable, proprietary and confidential trade secret information.  And, Dr. Kender possessed LVPG patient lists solely as a result of his employment with LVPG.

5.        Absent the granting of injunctive relief barring MDVIP from using, disclosing or retaining LVPG's confidential, proprietary and trade secret patient information, LVPG will suffer irreparable harm.

## THE PARTIES

6.        LVPG is a non-profit corporation, organized and incorporated according to the laws of the Commonwealth of Pennsylvania, with a principal place of business at 1605 North Cedar Crest Boulevard, Roma Building, Suite 610, Allentown, Pennsylvania, 18104.  LVPG is a wholly-owned subsidiary of Lehigh Valley Health Network, Inc.

7.        Lehigh Valley Health Network, Inc. ("LVHN") is also a non-profit corporation, organized and incorporated according to the laws of the Commonwealth of Pennsylvania.  LVHN is a tertiary care provider of medical services, through its subsidiary corporations, and serves eastern Pennsylvania.  LVHN includes two (2) licensed hospitals, as well as numerous community health centers.

8.        LVPG hired Dr. Kender to work in its Department of Internal Medicine during January 2003.

9.      Defendant MDVIP, Inc. is a for profit Delaware Corporation with its principal place of business located at 6001 Broken Sound Parkway, NW, Suite 100, Boca Raton, FL 33487.

10.      Upon information and belief, MDVIP also maintains a place of business at 241 Chestnut Street, Unit E, Philadelphia, PA.

11.      Upon information and belief, MDVIP is a national network of physicians utilizing the "retainer medicine" business model, which is also commonly referred to as "luxury, platinum or concierge" medicine.

12.      Upon information and belief, MDVIP's concierge model limits each physician to a practice of no more than six hundred (600) patients, and each patient is required to pay an annual membership fee of between one thousand five hundred ($1,500) and eighteen hundred ($1,800) dollars.

13.      The concierge medicine membership fee is a cost not reimbursed by health insurers.

14.      Upon information and belief, in exchange for payment of its annual membership fee, MDVIP network physicians agree to provide each patient with certain preventive and personalized care.

15.      Concierge medicine generates significant additional revenue for both the MDVIP network and the participating physician.  For example, upon information and belief, MDVIP returns to the physician one thousand dollars ($1,000) from each annual membership fee; an amount that can approach six hundred thousand dollars annually ($600,000) for each MDVIP network physician.

3

16.     The concierge model, while very lucrative for the physician, comes at a tremendous cost to the public. For example, access to health care may be limited and patients may be abandoned by physicians who downsize their traditional existing practices to move to the concierge model. Further, patients who are unable to pay the membership fees will be abandoned by the concierge model practice.

17.     The concierge model is the very antithesis of LVPG's commitment to provide the best health care to all members of the community, regardless of ability to pay.

## JURISDICTION AND VENUE

18.     The Verified Complaint is filed and the jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000) and the parties are citizens of different states.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) as a substantial part of the events giving rise to the claims asserted occurred in this district.

## FACTUAL BACKGROUND

### LVPG

20.     LVPG is an established leader in providing innovative, patient-focussed, and community-oriented quality health care.

21.     LVPG has over four hundred (400) employed physicians addressing the health care needs of its patients.

22.     LVPG serves the health-care needs of its patients throughout eastern Pennsylvania.

23.     LVPG has expended substantial amounts of time, money and resources in developing, maintaining, and enhancing its patient-physician relationships.

24.	LVPG attained, and can only maintain, its present competitive advantage by preserving the confidentiality of its patient information.

25.	LVPG has taken and takes great care in maintaining the confidential and trade secret nature of such information by, for example, requiring physicians hired to sign Membership Agreements incorporating confidentiality and restrictive covenant provisions, maintaining highly restrictive information technology systems, and limiting disclosure of patient information solely to those individuals who have a business-based need to know.

26.	If this information became available to a competitor or public knowledge, LVPG's competitive advantage would be lost, and substantial monetary and other investments made by LVPG in developing, maintaining, and enhancing its physician-patient relationships would be irreparably injured or destroyed.

## Dr. Kender's Employment

27.	On or about April 15, 2003, Dr. Kender began his career with LVPG as a general internist in its Department of Internal Medicine, and was responsible for providing exceptional health care to each patient assigned to him by LVPG.

28.	In conjunction with his hiring by LVPG, Dr. Kender executed a Membership Agreement ("Agreement") dated January 10, 2003. At the time of execution, LVPG and Dr. Kender agreed that his employment would be governed, in part, by the LVPG Principles of Membership. (A true and correct copy of the Membership Agreement is attached hereto as Exhibit "A".) (A true and correct copy of the Principles of Membership is attached hereto as Exhibit "B.")

29.	Further, in entering into the Agreement, Dr. Kender expressly agreed to abide by "the Lehigh Valley Hospital (LVH) Medical Staff Bylaws, and the rules and regulations

of Lehigh Valley Hospital, as well as LVPG policies and procedures including all future

amendments." (Exhibit A hereto at 1.)

30.     The Principles of Membership expressly provides as follows:

### CONFIDENTIALITY OF INFORMATION

Member will not disclose information relating to LVPG operations or Medical Staff matters, without the written consent of LVPG, other than to duly authorized members of the Medical Staff, Licensing Boards or Agencies, the Joint Commission on Accreditation of Healthcare Organizations, third party reimbursement agencies and professional organizations, and as may be required to comply with law, regulation or order. (Exhibit B hereto at 4.)

31.     And, the applicable HIPPA – Confidentiality policy states, in part:

### HIPAA - CONFIDENTIALITY

\* \* \* \*

Unauthorized disclosure of confidential information is prohibited at any time during or after employment or affiliation with Lehigh Valley Health Network.

\* \* \* \*

Under no circumstances may an individual seek or use confidential information for personal gain or pass it on to any person outside Lehigh Valley Health Network, including family or friends, or even to other employees who do not need to know such information to carry out their duties. (See Conflict of Interest Policy).

(A true and correct copy of the HIPAA-Confidentiality policy is attached hereto as Exhibit "C.")

### Wrongful Conduct of MDVIP

32.     Throughout his employment, Dr. Kender held a position of the utmost trust

and confidence with LVPG, which provided him LVPG's most sensitive and confidential patient

information.

33.     Dr. Kender has a duty to abide by his contractual obligations, as well as a

duty not disclose confidential and trade secret patient information.

6

34.     MDVIP has a duty not to misappropriate confidential and trade secret patient information.

35.     On March 24, 2010, Dr. Kender directed LVPG's Practice Manager to provide to him a list of his assigned patients for a "research project".

36.     LVPG's Practice Manager, in response to this directive, on or about March 26, 2010, accessed an IDX administrative database and downloaded for Dr. Kender a report ("Report") on two thousand two hundred sixty-seven (2,267) LVPG patients listing their demographic information such as names, addresses, phone numbers, gender, and type of insurance. (This information is Protected Health Information ("PHI") as defined by The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), as amended.) This report was then sent to Dr. Kender's LVHN e-mail account.

37.     Simultaneously with obtaining LVPG's confidential and trade secret patient data and without the knowledge or permission of LVPG, Dr. Kender engaged in ongoing discussions with MDVIP about joining its national physician network.

38.     To facilitate discussions with Dr. Kender and to give the appearance of propriety to such discussions, MDVIP entered into a HIPAA Business Associate Agreement and a Confidentiality Agreement with Dr. Kender on April 4, 2010, and again on April 5, 2010. (True and correct copies of the April 4, 2010 Business Associate Agreement and Confidentiality Agreement are collectively attached hereto as Exhibit "D," and true and correct copies of the April 5, 2010 Business Associate Agreement and Confidentiality Agreement are collectively attached hereto as Exhibit "E.")

39.     Dr. Kender provided the signed HIPAA Business Associate Agreement and Confidentiality Agreement to MDVIP on April 5, 2010 via facsimile with the express direction

to MDVIP to "not contact my office regarding my patient information. I will email the spreadsheet containing this information to [MDVIP's Director, Physician Development, Chris Walsh] as soon as I receive back these documents." (A true and correct copy of the April 5, 2010 facsimile is attached hereto as Exhibit "F.") (emphasis in original).

40.     MDVIP either knew or should have known that Dr. Kender was employed by LVPG and did not have the authority to sign the HIPAA Business Associate Agreements or Confidentiality Agreements on its behalf. Furthermore, MDVIP's knowledge of the scope of Dr. Kender's authority is further evidenced by its failure to disclose its dealings with Dr. Kender to LVPG during a subsequent business meeting between MDVIP and LVPG.

41.     Dr. Kender subsequently sent the Report to MDVIP.

42.     Dr. Kender had no authority to obtain the Report, execute the MDVIP Business Associate Agreements and Confidentiality Agreements, and/or to send the Report to MDVIP. Furthermore, Dr. Kender knew that he lacked the necessary authority as further evidenced by his affirmative actions to hide his conduct from LVPG.

43.     Similarly, MDVIP had no authority to receive, possess and/or use the Report.

44.     Upon information and belief, between April 5, 2010, and April 23, 2010, MDVIP itself, or through a subcontractor, caused an automated call (robocall) to be placed to an undetermined number of LVPG patients identified on the Report.

45.     Upon information and belief, the robocall invites the patient to place a response call to a toll free number. Each responding patient is then asked to participate in a "survey."

46.        Upon information and belief, the survey gathers some background information on usage and length of the doctor- patient relationship. The heart of the MDVIP survey consists of questions that probe a patient's interest in: (i) preventive care; (ii) familiarity with concierge care; and (iii) willingness to pay between $1,500 and $2,400 per year for access to a concierge practice. The survey also asked about responding patient's health status and other questions that tend to profile the patients (e.g., "Since I really believe that good health is important, I find the time to exercise regularly, sleep enough, and make healthy choices in my daily diet"—agree/disagree?). In addition, MDVIP asked during the survey about lab test utilization.

47.        Upon information and belief, the demographic information and survey questions are designed to identify affluent healthy patients who would make the "concierge medicine" practice financially lucrative for Dr. Kender and MDVIP.

48.        Upon information and belief, approximately two hundred (200) LVPG patients participated in the MDVIP survey.

49.        In a blatant attempt to prevent LVPG from learning of MDVIP's and his wrongdoing, Dr. Kender directed his staff to respond as follows to any patient inquiry received in response to MDVIP solicitations:

> Dr. Kender is participating in a research study. His patients are getting automated phone calls telling them that Dr. Kender would like them to participate in a survey and they are receiving a toll free number also. If you get any phone calls from patients, Dr. Kender is asking we tell the patients that he is participating in this research study and he is recommending his patients to complete the survey. If patients do no (sic) have the number and they wish to participate, the telephone number is 1-866-756-3847.

50.        Subsequently, on July 5, 2010, Dr. Kender advised LVPG that he entered into a Participation Agreement with MDVIP and on July 19, 2010, after initially denying that he

had done so, Dr. Kender admitted to LVPG that he sent to MDVIP demographic data on two hundred LVPG patients.

51.     LVPG then immediately demanded that MDVIP return *all* confidential and trade secret patient information including, all copies of such information. LVPG further demanded that MDVIP verify in writing that all patient information has been returned and destroyed. LVPG also demanded that MDVIP identify each of the approximately two hundred (200) LVPG patients who participated in the MDVIP survey. In addition, as to Dr. Kender, LVPG inquired about the content and location of the information disclosed by Dr. Kender.

52.     To date, MDVIP has refused to verify the return and/or destruction of the LVPG patient data. MDVIP has also refused to identify the LVPG patients who participated in the MDVIP survey unless LVPG agrees to preconditions imposed by MDVIP. MDVIP, however, did provide to LVPG on or about August 31, 2010, a copy of the information disclosed to it by Dr. Kender.

53.     Dr. Kender denies having the patient demographic information in his possession.

54.     The forgoing conduct of MDVIP is in direct violation of the HIPAA Privacy Rule.

55.     The Health Information Technology for Economic and Clinical Health Act ("the HITECH Act") was signed into law, and includes a provision regarding required notification in the event of a breach of patient privacy. 42 U.S.C. § 17932. The Secretary of the Department of Health and Human Services ("HHS") has adopted interim final regulations on breach notification for unsecured Protected Health Information. 74 FR 42740, (08/24/2009)(adding a new subpart D at 45 CFR 164.400 et seq.).

56.        The HITECH Act and implementing regulations mandate that LVPG take specific steps to address the conduct of MDVIP.

57.        Under the breach notification regulations, LVPG is obligated to provide written notification to subject individuals when their information is reasonably believed to have been accessed, acquired, used or disclosed as a result of a "breach", 45 CFR 164.404(a), and mandates the timeframe in which LVPG must give notice.  The regulations further provide that notice must be given not later than sixty days following discovery of the breach.

58.        A "breach" must be reported to affected individuals and to the Secretary HHS if:  (i) the use or disclosure of PHI violated the Privacy Rule; and, (ii) the prohibited use or disclosure poses a significant risk of financial, reputational or other harm to the affected individuals.

59.        LVPG suffered a "breach" when MDVIP used LVPG's PHI for marketing MDVIP's concierge care program .

60.        MDVIP directly violated the HIPAA Privacy Rule because it is not a business associate and its business associate agreements identified in Paragraphs 38 and 39 of this Verified Complaint are a sham.  And, MDVIP further violated the HIPAA Privacy Rule by "surveying" LVPG patients to persuade them to enroll in MDVIP's concierge care programs.

61.        Upon information and belief, during the survey process, MDVIP paid for all telemarketing robocalls, all follow up telemarketing surveys, and an alleged study of the feasibility of recruiting Dr. Kender.  Dr. Kender, however, paid nothing for the survey, but would have benefited from MDVIP's efforts.

11

62.     The Privacy Rule provides that no one may engage in "marketing" without a prior written authorization from the individuals to whom the marketing is directed. 45 CFR 164.508(a)(3).

63.     The HITECH Act and implementing regulations mandate that LVPG take specific steps to address the conduct of MDVIP.

64.     On August 4, 2010, when it discovered the Privacy Rule violations, LVPG was required to immediately commence an investigation to determine whether a "breach" occurred and if so, the appropriate written notification to be provided to the affected patients not later than sixty days following discovery of the breach.

65.     A "breach" must be reported both the affected individuals and to the Secretary HHS if: (i) the use or disclosure of PHI violated the Privacy Rule; and, (ii) the prohibited use or disclosure poses a significant risk of financial, reputational or other harm to the affected individuals.

66.     Here, the MDVIP survey created a significant risk of financial harm for the reasons that (1) the surveyed individuals may be confused about how MDVIP aligns with their existing health insurance causing the individuals to make coverage or financial decisions that are prejudicial and unnecessary; (2) elderly Medicare beneficiaries may be confused about the extent of their Medicare Advantage coverage and what services they may obtain through MDVIP; and/or, (3) patients pay MDVIP not realizing that the value of its program has diminished in light of the Patient Protection and Affordable Care Act ("PPACA") driven benefit changes to Medicare and commercial insurance.

67.     In addition, the MDVIP survey could easily created a significant risk of other harm. For example, some individuals may be targeted for telemarketing for products of

companies related to MDVIP. Other patients may have their ability to obtain access to health care services impaired because they misapprehend the content of the MDVIP survey and mistakenly assume that LVPG is closing its physician practices to those who could not afford "concierge" care. The survey also creates a significant risk of "other harm" from unscrupulous telemarketers who obtain a list of contact information from MDVIP.

68.     In accordance with its breach notification obligations, LVPG must give notice to each of the approximately two hundred (200) LVPG patients who participated in the MDVIP survey not later than sixty (60) days from the date LVPG learned of the breach. Such notice should be given on or before October 4, 2010.

69.     LVPG is to provide *meaningful* notice to the affected patients. 45 C.F.R. §164.404 (c).

70.     Meaningful notice affirmatively provides the patient with (1) the date of the breach and the date of the discovery of the breach, if known; (2) a description of the types of unsecured protected health information involved in the breach (i.e., whether full name, social security number, date of birth, home address, account number, diagnosis, disability code, or other types of information were involved); (3) any steps individuals should take to protect themselves from potential harm resulting from the breach; (4) a brief description of what the covered entity involved is doing to investigate the breach, to mitigate harm to individuals, and to protect against any further breaches; and, (5) contact procedures to ask questions or learn additional information, which must include a toll free telephone number, an e-mail address, Web site, or postal address. 45 C.F.R. §164.404 (c).

71.     In addition, under the Privacy Rule, individuals also have a right to know to whom there protected health information has been disclosed. 45 C.F.R. §164.528 (a)

13

72.     LVPG cannot make the required notifications and disclosures for the reason that MDVIP will not disclose despite demand to do so (1) the identities of the LVPG patients who participated in the MDVIP survey (unless LVPG agrees to certain preconditions imposed by MDVIP); (2) the identity of its subcontractor(s) who conducted the survey on MDVIP's behalf; (3) the full extent of its use of LVPG patient information; and, (4) steps taken, if any, to destroy and/or safeguard LVPH patient information in its possession and/or in possession of MDVIP's subcontractor(s).

73.     The failure to timely provide the required notification will expose LVPG to significant risk of fines and penalties.

74.     In addition, LVPG may also have to undertake significant other remedial measures as a result of MDVIP's violations of the HIPAA Privacy Rule.

75.     Unless the relief requested is granted, LVPG will suffer irreparable harm, including, but not limited to, the imposition of fines and penalties, and the misappropriation, misuse and disclosure of its trade secret and confidential patient information.

76.     The damages to LVPG are not susceptible to accurate measurement and are, by their nature, irreparable.

77.     LVPG has no adequate remedy at law.

## COUNT I

## LVPG v. MDVIP, INC.

## MISAPPROPRIATION OF TRADE SECRETS

78.        The averments set forth in Paragraphs 1 through 77 of the Verified

Complaint are incorporated by reference herein as if set forth in their entirety.

79.        In engaging in the conduct described above, MDVIP has misappropriated,

used and disclosed LVPG's confidential and trade secret patient information in violation of the

Pennsylvania Uniform Trade Secrets Act, 12 Pa.C.S.A. §§5301 – 08.

80.        MDVIP's conduct is willful, intentional and unprivileged, and has caused

and/or will cause irreparable harm, as well as monetary damages to LVPG.

81.        The use and disclosure of this information will be unfair and unjust to

LVPG and has caused and/or will continue to cause it to suffer irreparable harm entitling it to

preliminary and permanent injunctive relief.

82.        LVPG is also entitled to compensatory damages in an amount to be

determined, statutory attorneys' fees, exemplary damages, and such other legal or equitable relief

as the Court deems appropriate.

WHEREFORE, LVPG prays for:

1.        A temporary restraining order, preliminary and permanent injunction,

against MDVIP and all other persons or entities acting in concert with it or on their own behalf

or participating with them, enjoining MDVIP from, directly or indirectly, using or disclosing or

retaining any proprietary, confidential or trade secret patient information of LVPG.

2.        An immediate accounting of (a) all proprietary, confidential or trade secret

patient information of LVPG in MDVIP's possession; (b) all proprietary, confidential or trade

15

secret patient information of LVPG disclosed by MDVIP to any third party including, the identity each such third party; and, (c) all proprietary, confidential or trade secret patient information of LVPG used by MDVIP and/or any person acting on MDVIP's behalf.

3.　　A temporary restraining order, preliminary and permanent injunction, against MDVIP and all other persons or entities acting in concert with it or on their own behalf or participating with them, directing the return of (i) all proprietary, confidential or trade secret patient information of LVPG in MDVIP's possession; (ii) all proprietary, confidential or trade secret patient information of LVPG disclosed by MDVIP to any third party; and, (iii) all proprietary, confidential or trade secret patient information of LVPG used by MDVIP and/or any person acting on MDVIP's behalf.

4.　　A temporary restraining order, preliminary and permanent injunction, against MDVIP and all other persons or entities acting in concert with it or on their own behalf or participating with them, directing the immediate identification of each of the approximately two hundred LVPG patients who participated in the MDVIP survey.

5.　　A judgment in LVPG's favor and against MDVIP for monetary damages, including, but not limited to, all amounts necessary to compensate LVPG for MDVIP's wrongful, willful and malicious activities including LVPG's reasonable attorneys' fees.

6.　　A judgment in LVPG's favor and against MDVIP for exemplary damages for its willful and malicious conduct.

## COUNT II

## LVPG v. MDVIP, INC.

### TORTIOUS INTERFERENCE WITH CONTRACT

83.     The averments set forth in Paragraphs 1 through 82 of the Verified Complaint are incorporated by reference herein as if set forth in their entirety.

84.     By engaging in the conduct described above, MDVIP tortiously interfered with the contractual relationship between LVPG and Dr. Kender for the purpose of disrupting LVPG's charitable mission to provide the best quality of care to all members of the community regardless of ability to pay.

85.     MDVIP's conduct is willful, intentional, and unprivileged and has caused and is causing actual damage and loss to LVPG.

86.     As a result of MDVIP's interference with LVPG's contractual relationship with Dr. Kender, LVPG has suffered actual damage and loss.

WHEREFORE, LVPG prays for:

1.     A judgment in LVPG's favor and against MDVIP for monetary damages, including, but not limited to, all amounts necessary to compensate LVPG for MDVIP's wrongful activities.

2.     A judgment in LVPG's favor and against MDVIP for exemplary damages for its willful and malicious conduct.

## COUNT III

## LVPG v. MDVIP, INC.

### TORTIOUS INTERFERENCE WITH CONTRACT

87.     The averments set forth in Paragraphs 1 through 86 of the Verified Complaint are incorporated by reference herein as if set forth in their entirety.

88.     By engaging in the conduct described above, MDVIP tortiously interfered with the contractual relationships between LVPG and its patients for the purpose of disrupting LVPG's delivery of patient-focused health care and diverting valuable business and patient goodwill.

89.     MDVIP's conduct is willful, intentional, and unprivileged and has caused and is causing actual damage and loss to LVPG.

90.     As a result of MDVIP's interference with LVPG's contractual relationships with its patients, LVPG has suffered actual damage and loss.

WHEREFORE, LVPG prays for:

1.     A judgment in LVPG's favor and against MDVIP for monetary damages, including, but not limited to, all amounts necessary to compensate LVPG for MDVIP's wrongful activities.

2.     A judgment in LVPG's favor and against MDVIP for exemplary damages for its willful and malicious conduct.

Respectfully Submitted,
POST & SCHELL, P.C.


By: _____

A. James Johnston, Esquire
Attorney I.D. No. 32300
Edward F. Shay, Esquire
Attorney I.D. No. 18481
Andrew W. Allison, Esquire
Attorney I.D. No. 63116
1600 John F. Kennedy Boulevard
Philadelphia, PA  19103-2808

Glenn Guanowsky, Esquire
Attorney I.D. No. 50823
Vice President, Legal Services
Lehigh Valley Hospital & Health Network
234 North 17th Street
Allentown, PA  18105

Dated: October 14, 2010                Attorneys for Plaintiff

## VERIFICATION

I, Debbie Salas-Lopez, MD, MPH, FACP, hereby verify that I am the Leonard Parker Pool Chair, Department of Medicine, and Associate Chief Medical Officer, that I am authorized by Lehigh Valley Physician Group to make this verification on its behalf, and that all facts averred in the foregoing Verified Complaint are true and correct to the best of my knowledge, information and belief.

The undersigned understands that this verification is made under penalty of perjury under the laws of the United States of America.

Date: 10/6/10

Debbie Salas-Lopez, MD, MPH, FACP
Leonard Parker Pool Chair, Department of Medicine
Associate Chief Medical Officer